```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3      MARTIN HOWARD, et al.,

 4              Plaintiffs,
         vs.                           Civil Action No. 17-1057
 5
        ARCONIC INC., et al.,
 6
                Defendants.
 7
                              - - -
 8

 9      Transcript of Video Status Conference on Tuesday,
        January 11, 2022, United States District Court, Pittsburgh,
10      Pennsylvania, before Chief Judge Mark R. Hornak.

11
        APPEARANCES:
12
        For the Plaintiffs:    Emma Gilmore, Esquire
13                             David A. Rosenfeld, Esquire
                               Alfred G. Yates, Jr., Esquire
14                             Gerald Rutledge, Esquire
                               Magdalene Economou, Esquire
15                             Villi A. Shteyn, Esquire

16      For the Defendants:    Paul Vizcarrondo, Esquire
                               Bradley R. Wilson, Esquire
17                             Carrie M. Reilly, Esquire
                               David E. Kirk, Esquire
18                             Melissa J. Tea, Esquire
                               Kiet T. Lam, Esquire
19                             Daniel C. Lewis, Esquire

20
        Court Reporter:        Sharon Siatkowski, RMR, CRR, CBC, CRI
21                             700 Grant Street, Ste. 5300
                               Pittsburgh, Pennsylvania 15219
22

23
        Proceedings recorded by mechanical stenography;
24      transcript produced by computer-aided transcription.

25
```

<pre>
 1                     P R O C E E D I N G S

 2                              - - -

 3        (10:04 a.m., Zoom Video proceedings:)

 4             THE COURT:  This is a video status conference in Civil

 5   Action 17-1057.  The first named plaintiff is Martin Howard, and

 6   the first named defendant is Arconic Inc.

 7             We have a lot of people on the call.  I appreciate

 8   everyone being here.

 9             On for the Court, I'm Judge Mark Hornak.  Also present

10   is one of my law clerks, Ms. Nicole Agama.  Our court reporter

11   today, of course, is Ms. Sharon Siatkowski.

12             Let's make sure that I can put a name to a party with

13   everyone.  Why don't we go slowly.  I understand, Ms. Gilmore,

14   you're going to take the pilot seat for the plaintiffs today.

15   Nice to see you.

16             MS. GILMORE:  Good morning, Your Honor.  Yes, I will.

17   Emma Gilmore, from Pomerantz, on behalf of the plaintiffs.

18             THE COURT:  Great to see you.  Who else is on the

19   call -- we'll go slowly -- for the plaintiffs' side of the case?

20             MR. ROSENFELD:  Good morning, Your Honor.  David

21   Rosenfeld, Robbins Geller.

22             THE COURT:  Mr. Rosenfeld, nice to see you.

23             MR. ROSENFELD:  Same here.

24             THE COURT:  Next, for the plaintiffs?

25             MR. YATES:  Al Yates, here in Pittsburgh, Judge.
</pre>

```
 1                    THE COURT:  Okay, Mr. Yates.  Nice to see you.

 2                    MR. RUTLEDGE:  Gerald Rutledge, Your Honor.

 3                    THE COURT:  Mr. Rutledge, nice to see you.

 4                    Anyone else for the plaintiffs?

 5                    MS. ECONOMOU:  Good morning, Your Honor.  Magdalene

 6        Economou, from Robbins Geller, on behalf of the plaintiffs.

 7                    THE COURT:  Great, and you're on audio.  Nice to see

 8        you, Ms. Economou.

 9                    MR. SHTEYN:  Good morning, Judge.  Villi Shteyn from

10        Pomerantz, also for the plaintiffs.

11                    THE COURT:  Okay.  Oh, okay.  Good to see you,

12        Mr. Shteyn.

13                    Others for the plaintiffs?

14                    MS. GILMORE:  That's it, Your Honor.

15                    THE COURT:  Okay.  For the defense, I understand that

16        Mr. Vizcarrondo is going to be the lead speaker for the defense.

17        Good to see you, sir.  Happy New Year to you and everybody else

18        on the call.

19                    MR. VIZCARRONDO:  Same to you, Your Honor.

20                    THE COURT:  Who's next up for the defendants?

21                    MR. WILSON:  Good morning, Your Honor.  Bradley Wilson

22        from Wachtell Lipton.

23                    THE COURT:  Mr. Wilson.  Next?

24                    MS. REILLY:  Good morning, Your Honor.  Carrie Reilly

25        from Wachtell Lipton.
```

```
 1              THE COURT:  Ms. Reilly, nice to see you.

 2              MR. KIRK:  Good morning.  David Kirk, Wachtell Lipton.

 3              THE COURT:  Mr. Kirk, nice to see you.

 4              MS. TEA:  Good morning.  Melissa Tea from K&L Gates,

 5  for Arconic.

 6              THE COURT:  Ms. Tea, I see the Golden Triangle behind

 7  you.

 8              Mr. Lam, you were next.

 9              MR. LAM:  Kiet Lam for defendants as well.

10              THE COURT:  Mr. Lam, nice to see you.

11              MR. LEWIS:  Daniel Lewis from Shearman & Sterling,

12  Your Honor, for the underwriter defendants.

13              THE COURT:  Okay.  And I see a Ms. Montgomery and a

14  Mr. Wilson.  I feel like I'm Miss Janey in Romper Room when I

15  see who I see.

16              Mr. Wilson, how do you fit into the big picture here?

17  Oh, you already identified yourself.  I apologize.

18              MR. WILSON:  That's okay.  Yes.  I'm with Wachtell

19  Lipton.

20              THE COURT:  Ms. Montgomery?

21              MS. MONTGOMERY:  Good morning, Your Honor.  Kate

22  Montgomery.  I'm in-house counsel for Arconic.

23              THE COURT:  Okay.  Nice to have you with us.

24              Anybody not identified themselves?  We have somebody

25  on the phone that ends with 3243.
```

```
 1              MS. GARRAUX:  Good morning, Judge.  It's Lauren
 2   Garraux from Howmet Aerospace.
 3              THE COURT:  Ms. Garraux, nice to hear from you.
 4              Is there anybody that has not either spoken up or that
 5   I've not identified?
 6         (Brief pause in the proceedings.)
 7              THE COURT:  Okay.  Well, thanks, everyone, for being
 8   available and for being here.
 9              I set this as a status conference because Mr. Yates
10   raised the issue of having a status conference.  And it's our
11   practice here, if any lawyer in any case asks for a status
12   conference, we convene one, absent some extraordinary
13   circumstances that I've not run into in ten and a half years.
14   So it's sort of an automatic.
15              And then I concluded, well, if we were going to have a
16   status conference, the odds were pretty high that we'd see all
17   of you folks.  And therefore, I thought if anybody had anything
18   they wanted to say regarding the pending motions for 1292(b)
19   certification from the Court, in fairness, I should make sure we
20   set aside a little time to hear from you if there's anything you
21   want to add to the papers that have been filed.
22              So, Mr. Yates, why don't we start with you.  You got
23   the ball rolling.  Utilizing our published chambers' procedures
24   of counsel can call the office anytime to ask for a conference
25   or for some procedural thing to happen, which you did, so happy
```

1  to hear from you, sir.

2          MR. YATES: (Muted.)

3          THE COURT:  You're on mute, Mr. Yates.

4          MR. YATES:  That would be fine, Judge.  I'd be happy

5  to, but I think Ms. Gilmore's taking the lead on that.  But I

6  could proceed.

7          THE COURT:  Happy to have you lateral to Ms. Gilmore.

8  Ms. Gilmore, happy to hear from you.  Thanks, Mr. Yates.

9          MS. GILMORE:  Thank you, Your Honor.  The Court denied

10  in part defendants' motion to dismiss the complaint, and the

11  automatic discovery stay of the PSLRA has been lifted.

12          THE COURT:  Yeah.  I have to say, I suspect the

13  defendants will characterize it as I granted most of the motion

14  to dismiss and denied it in part.

15          MS. GILMORE:  Be that as it may, there are claims that

16  have been denied and that -- claims that have been granted.

17  So --

18          THE COURT:  So we have two left; right?  The 10(b)

19  claim and the Section 11 claim; right?

20          MS. GILMORE:  That's correct, Your Honor.  And

21  plaintiffs are eager to commence discovery.  This case has been

22  pending since November of 2018.  Plaintiffs did reach out to

23  meet and confer with defendants to start discovery.  Defendants

24  have refused, and their position is that they are -- should not

25  be engaged in any discovery because there is a pending motion to

1    certify an issue for interlocutory appeal in front of Your

2    Honor.

3          Of course, we would like to proceed on discovery if

4    that motion doesn't stay the case in any way.  So we

5    respectfully are asking the Court to direct the parties to

6    commence discovery in this case.

7          THE COURT:  Okay.  And 1292(b) says that either the

8    filing or the grant of a motion does not stay the case unless

9    either I or the Court of Appeals stay the case.

10         MS. GILMORE:  That is correct, and such motions are

11   typically granted only in extraordinary circumstances.  We cited

12   a Third Circuit opinion for that proposition.  This case doesn't

13   fit the extraordinary circumstance box by any means.

14         I do have some points to make about the defendants'

15   motion, but I don't know if Your Honor would like to first hear

16   from defendants since it's their motion.

17         THE COURT:  We'll swing around and give you a chance

18   in opposition, Ms. Gilmore, to the substance of the

19   certification motion.

20         I will say this, and I'm pretty confident given the

21   horsepower of the lawyers that are on this call, you already

22   know that in ten years, 3,300 civil cases, I've granted two

23   1292(b) motions.  I've stayed the case in both of them.  Both of

24   them were accepted by the Court of Appeals.  And just like they

25   say on the television commercials, you know, past performance is

1    no predictor of future returns.

2           But I will say, I have in each of the two cases, one

3    involving the IDEA and the special education rules that apply in

4    the federal courts and the other regarding the interaction

5    between two separate provisions of the United States Bankruptcy

6    Code and the reach of the automatic stay and the reach of the

7    discharge provisions, I did stay it at least until the Court of

8    Appeals decided what to do.

9           I've not entered a formal stay order here; you're

10   absolutely spot on, Ms. Gilmore, and that's probably a flaw on

11   my case management activities.

12          But I will say this:  The odds are extraordinarily

13   high that if I grant the certification motion, I'm going to

14   formally stay the case at least until the Court of -- one, we

15   see if Arconic actually files the motion -- I have no reason to

16   doubt that they would -- with the Court of Appeals.  That's a

17   pretty fast turnaround.  That's ten days.  And then we would see

18   what the Court of Appeals does.  Obviously, if they decline to

19   take the case, which they may or may not explain, if that's the

20   route that they take, then off to the races.

21          On the other hand, if they do take the case, then it's

22   likely I would keep the stay in place.  But I would -- you know,

23   if somebody thought we should have further discussion about it

24   at that time, it would be such a significant change, it seems to

25   me, in the turf, if you will, of the case, that that equation

1  may change.  But you're dead on on the law, Ms. Gilmore.  I

2  don't disagree that you've outlined the law.

3          So, Mr. Vizcarrondo, before we hear from you, I do

4  have some questions about the motion and the response.  And we'd

5  hear from you first on that and then Ms. Gilmore.  And then

6  since you're the moving party, Mr. Vizcarrondo, we'd give you

7  the last say on it.

8          But in terms of not the merits of the motion but

9  anything else about the status or other things in the case, if

10  there's anything you'd like to talk about, happy to hear from

11  you.

12          MR. VIZCARRONDO:  No, Your Honor.  I mean, we do agree

13  that if the Court granted us leave to appeal and the Third

14  Circuit takes the appeal, a stay would be entirely appropriate

15  because it would undercut the whole purpose of seeking an

16  interlocutory appeal.  If the case went forward on such matters

17  as class certification and merit discovery, it would not be at

18  all clear what the scope of the case would be.  What the class

19  would be and what the scope of the case would be.  So I don't

20  have anything more to add to that, Your Honor.

21          THE COURT:  Okay.  Appreciate that, Mr. Vizcarrondo.

22          Ms. Gilmore, I do have a couple of questions for you

23  so I can make sure I understand your opposition papers because

24  they fold into some of the points that were made in the moving

25  papers and in the reply papers.

```
 1              Should I operate from greeting the opposition that the

 2    plaintiffs' view is that if this motion had never been filed,

 3    that the discovery that would take place in this case, if it

 4    were only the 10(b) claim that survived or only the Section 11

 5    claim that survived, the discovery would be identical; there's

 6    no difference?

 7              MS. GILMORE:  The discovery pretty much overlaps.  I

 8    know the defendants are arguing that there will be less

 9    discovery for Section 11 claims only.  But what we're saying

10    is --

11              THE COURT:  That's a strict liability.  Section 11 is

12    a strict liability claim; right?

13              MS. GILMORE:  That's correct.  That's correct.

14    However --

15              THE COURT:  So what somebody was thinking, will it

16    be -- if the only claim in the case, if the only claim the

17    plaintiffs had brought -- I'm not saying you did -- but if the

18    only claim you had brought was a Section 11 claim, would anybody

19    care what anybody was thinking when they issued certain

20    statements, or is it strict liability?

21              MS. GILMORE:  Well, there is an element of knowledge

22    that has to be an element of knowledge that will be part of

23    discovery because all -- the statements have to be false and

24    misleading when made.  And typically, defendants raise the

25    argument that nobody knew about those -- the statement that
```

1   there was a misconduct -- and therefore those statements were

2   not false and misleading when made.  And that's part of the

3   claim for Section 11.  It's part of one of the elements.  So

4   knowledge would be an issue.

5          THE COURT:  So would the discovery be any different if

6   it was just a Section 11 claim in the case or if it was just a

7   10(b) claim in the case?

8          MS. GILMORE:  Our position is that it wouldn't be.  It

9   would be substantially overlapping, the same as a 10(b), because

10  you still have that element of knowledge that you have to show.

11         THE COURT:  Okay.  Now, in looking at the Court's

12  opinion, and I recognize the ground may have changed since

13  June 23, 2021, when we issued it, but on page 40 -- I'm looking

14  at the ECF number, but it happens to be the same as the page

15  number -- the first full paragraph begins with the phrase:

16  "There remains a circuit split about the corporate scienter

17  doctrine."  And then there's the vantage string cite with

18  parentheticals.

19         Do you believe that was -- and if it is, no offense

20  will be taken.  I read your papers.  One inference that could be

21  drawn from the papers in opposition is there's not a circuit

22  split, that -- because the defense's argument is it's not a --

23  forget about the one, two, three levels of scienter that might

24  meet the test.  The defendants' papers could be fairly -- yeah,

25  could be fairly read as saying it's not a given that corporate

1  scienter, that is scienter that is attributed to the

2  organization rather than flowing from the state of mind of

3  another named defendant, is not a universally recognized theory

4  of 10(b) liability.

5          And, at least I thought, when we put that part of the

6  opinion together, that it was not a concluded issue.  Before you

7  even get to the magnitude or the level or the juice of the

8  scienter, the whether was not yet uniform.  And that's why I

9  used the phrase "there remains a circuit split."

10          Do you believe that, whether it was accurate then or

11  not, as of today, there is not a circuit split on the question

12  of whether corporate scienter could be the basis of 10(b)

13  liability?

14          MS. GILMORE:  I think there isn't a circuit split in

15  the sense that the circuit courts have recognized the existence

16  of the doctrine of corporate scienter.  And then there are

17  nuances into what and to what that falls under, whether it's a

18  broader view of corporate scienter, a middle ground view, or the

19  narrow view.  But there's no circuit court that has rejected the

20  doctrine of corporate scienter.  So in that sense, there isn't a

21  split at all.

22          THE COURT:  So using the magic language of 1292(b),

23  and let me get that handy here.  Give me one second.  You folks

24  probably have your papers organized better than I do.  So the

25  plaintiffs do not believe that there is currently a substantial

 1   ground for difference of opinion as to whether corporate

 2   scienter is a theory of liability that could support a 10(b)

 3   claim?

 4          MS. GILMORE:  That's correct, Your Honor.  And we also

 5   believe that this Court has not decided a controlling question

 6   of law because it has not picked the standard of scienter over

 7   another one of the -- you know, it hasn't picked the broader

 8   standard, the narrow, or the middle standard.  It simply

 9   surveyed the law of corporate scienter as it exists and applied

10   it to the facts of this case.

11          THE COURT:  Yeah, but my next paragraph on page 40

12   begins with the following:  "The Third Circuit is not

13   definitively weighed in on this question, stating that it has,

14   'neither has accepted nor rejected the doctrine of corporate

15   scienter in securities fraud actions,'" citing to the Rahman

16   case.

17          And then my colleague two floors down, Judge Phipps,

18   in the PAMCAH-UA Local 675 non-precedential opinion that I know

19   you all know about because you talked about it from August 5th

20   of this year, he says, "The investors then seek to impute the

21   alleged mental states of those executives to BT Group by urging

22   this Circuit to adopt the so-called 'corporate scienter

23   doctrine.'"  And then he goes on to say -- he talks about why it

24   wouldn't fit on the facts of the case if it existed.

25          So doesn't the fact that the Court of Appeals for the

1    Third Circuit, our regional Court of Appeals, has seemingly

2    noted the existence of the doctrine but hasn't accepted or

3    rejected it but keeps noting it, doesn't that indicate -- and

4    then all of the litigants that were litigating those cases

5    obviously took different positions on it, and we have Judge

6    Salas's opinion and some other opinions, Judge Phipps's opinion.

7    Doesn't that show that there's a substantial difference of

8    opinion currently on whether the doctrine itself, irrespective

9    of what octane level of scienter would fit the bill, isn't there

10   a substantial grounds for difference of opinion as to whether

11   that theory of liability even exists?

12          MS. GILMORE:  I don't believe so, Your Honor, as in

13   the sense that every circuit that has addressed their issue has

14   recognized it.  The Third Circuit has never said it refuses to

15   recognize the doctrine of corporate scienter.  It had at least

16   five occasions in the past few years.  In each case it left each

17   to be decided by the capable hands of the district court judges

18   by surveying the law, applying the law to the facts of the case.

19   And here, the Court surveyed the law and determined that even --

20   that the complaint of plausibility can impute scienter even

21   under the more narrow nuance of the corporate scienter doctrine.

22          THE COURT:  Okay.  Appreciate that.  Let me see if I

23   have any other preliminary questions for you before I turn to

24   Mr. Vizcarrondo, and then of course we will circle back to you,

25   Ms. Gilmore.

```
 1              MS. GILMORE:  Okay.
 2              THE COURT:  I think those are the only questions I
 3   have for you at the moment, Ms. Gilmore, but we'll hear from you
 4   substantively.
 5              Mr. Vizcarrondo, the first question I'd have for
 6   you -- thanks, Ms. Gilmore.  Appreciate you bearing with me on
 7   the questions, and we'll make sure we swing back around.
 8              MS. GILMORE:  Thank you.
 9              THE COURT:  Mr. Vizcarrondo, the plaintiffs argue in
10   their briefs on this question that I really shouldn't spend a
11   lot of time on it because Arconic waived it.  That Arconic has
12   never argued that the corporate scienter doctrine as a doctrine
13   doesn't apply.  What do you say about that?  What do you think
14   about that?
15              MR. VIZCARRONDO:  That's not correct, Your Honor.  As
16   we cite in our reply brief -- we cite citations to our briefs in
17   the motion to dismiss below.  We expressly held -- we expressly
18   argued that there was no -- that the scienter of the only
19   corporate officer who was alleged as a defendant, Klaus
20   Kleinfeld, was not adequately pled, and therefore the claim
21   against him had to be dismissed.  And that once the claim
22   against him had to be dismissed, there was no basis for
23   corporate scienter or for finding corporate scienter against
24   Arconic Inc. because the law requires that a -- that there be a
25   well-pled claim of corporate scienter -- of scienter by a
```

1  corporate defendant.  We also --

2         THE COURT:  But that argument sort of almost sounds

3  like the corporate scienter assertion fails because the

4  individual scienter assertions as to Mr. Kleinfeld failed as

5  opposed to an argument -- and there may be areas in between, so

6  I may be setting out polar opposites here -- as opposed to an

7  argument that says:  If there had never been a 10(b) claim

8  asserted against Mr. Kleinfeld, or more precisely there had

9  never been an argument even made that his state of mind should

10  be imputed to Arconic, that to the extent the plaintiffs would

11  attempt in the past or in the future to say there are all of

12  these other people, they weren't officers, but they were people

13  in the know, and their mens rea, if you will, their scienter,

14  should be chargeable back to Arconic.

15         At least when we wrote the opinion here, I had

16  operated on the understanding that part of Arconic's argument

17  is:  That doesn't cut it.  You can use any of the three levels;

18  you can have sort of the scienter in the ether, if you will.

19  But the idea that there's organizational scienter that has its

20  genesis in anything other than the personal scienter of a named

21  defendant just doesn't fly, doesn't exist.  That's not a theory

22  of attaching liability.  And that's part of what I understand

23  Arconic's argument to be now.  And the plaintiffs say you've

24  never really articulated that argument, therefore you can't

25  raise it now.

1          MR. VIZCARRONDO:  Well, Your Honor, with all due

2     respect, that is not a correct position.  We did survey the

3     state of the law in the Third Circuit with respect to corporate

4     scienter, and we noted that the Third Circuit had never -- had

5     never adopted the notion of corporate scienter.  And that in the

6     Roseville case it stated that if a corporate scienter were

7     viable in the Third Circuit, and it did not state that it was,

8     it would require circumstances that were so extraordinary that

9     it would have been impossible that there were not members of

10    corporate management that were aware of it.  And they gave the

11    example of General Motors stating that it had sold a million

12    SUVs when in fact it sold none.

13          We also expressly pointed out that with respect to

14    the basis that the Court's opinion ultimately found corporate

15    scienter, the alleged scienter of employees of a foreign

16    subsidiary, that the Third Circuit had indicated that that would

17    not be a sufficient basis.

18          Now, I will note that following Your Honor's

19    opinion -- at the time of Your Honor's opinion, you did not have

20    the benefit of the Third Circuit's opinion in the PAMCAH-UA

21    local case, which was decided in October of last year.  And in

22    that case, the Third Circuit rejected corporate scienter where

23    there was no adequately -- there was no claim pled against any

24    individual corporate officer, and the scienter of the corporate

25    defendant was sought to be pled on the basis of the allegedly

1    fraudulent activity of officers of a subsidiary.

2          And the Third Circuit said that that would not be an

3    adequate basis for pleading the scienter of the corporate

4    defendant in the absence of allegations of participation by the

5    corporate defendant, such as in a cover-up, none of which is

6    alleged here.

7          So certainly on the basis of that opinion, there is a

8    substantial issue that we believe the Third Circuit should be

9    allowed to address as to whether Arconic Inc.'s scienter on the

10   10b-5 case here can be based upon the alleged scienter of these

11   two employees of an indirect foreign subsidiary.

12         THE COURT:  Let me ask you a question on that point,

13   Mr. Vizcarrondo.

14         In looking at Judge Phipps' opinion in the pension

15   fund case, the 675 pension funds case, at Headnote 3, it's in

16   the Westlaw version, it reads:  "The allegations regarding

17   executives at BT Italy fall short, too.  Those executives, CEO

18   Giancarlo Cimini and CFO Luca Sebastiani, worked at BT Italy, a

19   subsidiary of BT Group.  But 'parent companies are not, merely

20   by dint of ownership, liable for the acts of their

21   subsidiaries,'" citation to a case.  And he goes on to say,

22   "Even if our circuit embraced the corporate scienter doctrine,

23   the investors would still need to plead that BT Group

24   participated in BT Italy's alleged fraud - for example, through

25   a cover-up."  Cites to another Third Circuit case.  "Here, the

1    investors make no such allegations."

2            Now, I did not go back and read the underlying

3    pleadings in that case, and maybe that's a flaw on my part, but

4    what I read Judge Phipps is saying there is:  It's not that

5    somebody that's an officer or an employee or an agent or a

6    manager of a subsidiary can't ever be the generator of the

7    requisite level of scienter, but rather, the fact that they are

8    one of those things doesn't do it.  You have to show a level of

9    active engagement.

10           And at least as I understood what we wrote here in our

11   opinion, the two -- it held that it was sufficiently plausible

12   under the second amended complaint that the allegations

13   regarding Wehrle and the other gentleman showed enough of a

14   factual connection between what they knew and did in Arconic

15   that the corporate scienter doctrine could go forward, not -- so

16   I didn't hold that because they were part of a subsidiary it was

17   enough but because there were sufficient factual allegations.

18   And maybe it wasn't a cover-up, is the language that's used in

19   the 675 pension fund case, but it was separate facts.

20           So I'm not sure either the opinion here or Judge

21   Phipps's opinion go quite as far as Arconic argues, and as a

22   definitional matter take out of the scienter equation anybody

23   that happens to work for a subsidiary, whether it's domestic or

24   foreign.

25           But help me understand.  That seems to be a really

1    important part for the defendants in their motion.

2            Am I misapprehending that point in your motion?  And

3    whether I am or not, it does seem to be a definitional argument

4    from the defendants.  The fact that Wehrle and this other fellow

5    were at a subsidiary definitionally takes them out of the

6    scienter conversation.  So help me have a better understanding

7    of that position by Arconic.

8            MR. VIZCARRONDO:  Yes, Your Honor.  As I understand

9    your opinion, you found that because Mr. Wehrle and Mr. Schmidt

10   were -- had knowledge of the failed tests of the Reynobond

11   product and either failed to disclose them to the BBA or to

12   customers, that was sufficient to show their scienter, their

13   knowledge of misleading communications with the BBA and

14   customers.

15           And then, as I understand your opinion, you said that

16   that would be sufficient to -- could be sufficient to establish

17   the corporate scienter of the named corporate defendant, Arconic

18   Inc., because they had been deputized by Arconic Inc.

19           THE COURT:  My phrase, not yours.  And I note that.

20           MR. VIZCARRONDO:  Correct.  Correct.

21           You know, I don't want to argue with you or quibble

22   with you as to whether or not in fact they were in fact

23   deputized or whether there were allegations that they were

24   deputized.

25           But what there clearly isn't is any pled facts, well

1  pled or not, that anyone at the corporate entity, the corporate

2  entity that is named as a defendant in this case, knew of

3  and participated in the activity that Your Honor found on --

4  established the scienter of these two employees of the foreign

5  subsidiary.  And I think that that falls smack within the

6  reasoning of the 675 pension case.

7       THE COURT:  So let me ask you this also -- and that's

8  very helpful, Mr. Vizcarrondo; I appreciate that.  Let me ask

9  you this:  The plaintiffs say in their response and in the

10 supplemental declaration of Ms. Gilmore, which I directed

11 somebody on the plaintiffs' side to file, that there is an

12 individual -- and I apologize if I misstate her name -- Dianna

13 or Diana Perreiah?

14       MR. VIZCARRONDO:  Perreiah.

15       THE COURT:  P-E-R-R-E-I-A-H.  And the plaintiffs say

16 that they -- at least as of the date of this filing, August 18th

17 of '21, they would be in a position to amend further, generate a

18 third amended complaint, which would be the fourth substantive

19 pleading in the case from the plaintiffs' side.  That would

20 involve Ms. -- it's Perreiah, Mr. Vizcarrondo?

21       MR. VIZCARRONDO:  I believe, yes, Diana Perreiah.

22       THE COURT:  That Ms. Perreiah, in her knowledge and

23 her communications, would buttress the corporate scienter of the

24 scienter allegations as to the 10(b) claim against Arconic.

25       If the plaintiffs had in the second amended complaint

 1  put in all of the things that they now say they would be in a

 2  position to put in a third amended complaint, how would that

 3  have impacted the defendants' 10(b) argument as to Arconic then

 4  and as to its motion now?

 5          Because one of the plaintiffs' arguments -- and if I

 6  get this wrong, Ms. Gilmore will correct it when we turn to

 7  her -- they say one of the reasons I shouldn't certify this is

 8  they could amend one more time.  And if they did amend one more

 9  time -- well, actually, they could amend at least one more

10  time -- and if they did do that, they put all of these new

11  information in and it would be beyond dispute that that would

12  be, from a pleading standpoint, sufficient to meet the corporate

13  scienter standard.

14          What do you think about that?

15          MR. VIZCARRONDO:  Well, Your Honor, first of all, they

16  don't have a right to amend again.  But putting that aside,

17  whether they'd be permitted to amend again, we go through in our

18  reply brief these newly discovered "hot documents" with some

19  granularity.

20          And I will say this.  Generally, the documents do

21  not -- do not -- suffice to base a claim against any individual.

22  They do not suffice to base a 10b-5 claim against Diana

23  Perreiah.  If they did, then that might make a difference

24  because you'd have a -- well, first of all, Diana Perreiah was

25  not an officer of Arconic Inc.  But let me put that aside.

1          If they provided documents that would establish a

2     basis to plead a claim against an officer of Arconic Inc., then

3     that might make a difference.  These documents do not do that.

4     And they're not claiming that they could amend to name Diana

5     Perreiah or anybody else as an individual defendant.  So that

6     would not be a sufficient basis to plead corporate scienter.

7          And as to whether or not these documents would meet

8     the standard of showing Arconic Inc.'s participation in the

9     fraud -- alleged fraud by Mr. Wehrle and Mr. Schmidt, they do no

10    such thing.

11         The only thing that they show is that Diana Perreiah,

12    who was the head of a separate United States-based unit of

13    Arconic Inc., sent some questions to -- I forgot which it was --

14    Mr. Wehrle or Mr. Schmidt about the product that was

15    manufactured by their subsidiary and asked some questions about

16    fire safety standards and other things in regard to Europe that

17    she was not familiar with.  That is it.

18         So if anything, it shows she did not know anything

19    about this Reynobond product, let alone that she knew that it

20    had failed any product safety tests or that there was any

21    misleading disclosures about whether this product had failed any

22    product safety cases.  It does not establish at all any

23    involvement by anybody at the Arconic Inc. level in whatever

24    actions or scienter were had by these two employees of the

25    French subsidiary.

1          THE COURT:  Appreciate that, sir.  Let me ask you two

2     more questions and then I'll give you some freeform opportunity

3     to tell me anything else you want.

4          Now, I'm going to make an observation.  Because I know

5     Ms. Siatkowski is taking this down, this could sound like it's

6     critical of my colleagues on the Court of Appeals for the Third

7     Circuit; it's not, either in intention or result.  But in the

8     Ellis case, which is the most recent case that I certified, in

9     Judge Ambro's opinion for the court, one of the things he

10     referenced was a principle of circuit law that says when there

11     is a 1292(b) certification and it's accepted, it's not quite as

12     rigid as the Supreme Court applies their review within the

13     questions fairly presented for cert.  But what Judge Ambro said

14     was:  We really only addressed the things that have come to us

15     on interlocutory certification.

16          Now, I will say in the first case that I granted

17     1292(b) certification in and the Court of Appeals took -- it's

18     called GL vs. Ligonier Valley School District -- the decision

19     that I had issued ended up being affirmed for reasons that, in

20     my estimation, bore no resemblance whatsoever to the reasons

21     that I had granted the relief here.  But it was representative

22     of the principle that appellate courts review judgments, not

23     opinions.  So the judgment was affirmed but for completely

24     different reasons.  It didn't -- in my estimation, the Court of

25     Appeals used an entirely different analytical model to reach the

1    conclusion that the ultimate judgment was right.

2         The reason I give that background is the proposed

3    questions that you're asking me to send up on 1292(b)

4    certification, the first one appears to be about as pure a

5    question of law as there exists.  And I want to quote it

6    directly.

7         This is on page 6 of ECF 144.  Question 1:  "Whether

8    the scienter required to state a claim under Section 10(b) of

9    the Securities Exchange Act of 1934 against this corporate

10   defendant can be pleaded under a theory of 'corporate

11   scienter.'"

12        It strikes the Court that's a pure question of law,

13   and it's one that our Court of Appeals has not answered.

14        Question 2 is:  "If so, whether plaintiffs'

15   allegations concerning employees of a foreign subsidiary of

16   Arconic satisfy whatever requirements for corporate scienter may

17   be pronounced by the Third Circuit."

18        That one sounds to me to be a bit more, at least

19   facially, a question of the application of law to facts, or at

20   least law to pled facts, and therefore may be less consistent

21   with the principle of a 1292(b) certification.

22        And Ms. Gilmore -- among the arguments that the

23   plaintiffs make in opposition to the motion is that -- that this

24   is really pretty fact bound, Judge.  It's really fact bound,

25   Judge.  And we are in a position to make it even more fact bound

 1   if you let us amend one more time.  And if you send this up,

 2   part of -- and Ms. Gilmore didn't say it quite this way but it's

 3   implicit, and it's fine -- part of their opposition to the

 4   circuit taking it is going to be:  Don't take it, Court of

 5   Appeals, because we're going to ask Judge Hornak for leave to

 6   amend.  Under your law, he's probably going to have to grant it.

 7   Here's what the amendment's going to say.  And when we amend

 8   that way, it's going to obviate this as being a controlling

 9   question of law.  That's, at least, part of the argument I hear

10   the plaintiffs make in opposition to your motion.

11          What do you think about all of that, Mr. Vizcarrondo?

12          MR. VIZCARRONDO:  Your Honor, there clearly is a

13   question of law as to whether the scienter -- that if the Third

14   Circuit is going to recognize -- finally recognize the existence

15   or the application of Third Circuit, their theory of corporate

16   scienter, whether as a matter of law that would require a claim

17   pled against a corporate officer of a corporate defendant, or

18   whether it can be satisfied by allegations of scienter by the

19   employees of a foreign subsidiary in the absence of allegations

20   of active participation by the corporate parent in the

21   subsidiary's fraud.

22          Now, you know, they can tell the Third Circuit that

23   we're going to amend again or we're going to put in these

24   documents that show whatever they show.  And, you know, we could

25   argue in the Third Circuit that if they -- if the standard is --

 1   if the Third Circuit would allow corporate scienter just on the
 2   basis of the scienter of employees of a foreign subsidiary but
 3   it would also require active participation by the corporate
 4   defendant, you know, we can argue with the Third Circuit as to
 5   whether or not these additional documents show that.  I think
 6   the Third Circuit can see it and they could, perhaps, make that
 7   decision.  Or they could say, well, we're going to leave that to
 8   Judge Hornak to sort through whether these allegations are
 9   sufficient.  But we rule as a matter of law that if there is no
10   claim against an individual corporate officer, you could only
11   establish the scienter of the corporation on the basis of the
12   scienter of employees of a foreign subsidiary if there are
13   well-pled facts of the corporate defendant participation in the
14   fraud, such as by a cover-up, and leave it to you to apply that
15   ruling of law to whatever the allegations may be.
16           THE COURT:  Appreciate that, sir.  And last question
17   before I give you a chance to sum up more generally.
18   Ms. Gilmore, in her papers -- well, I'm not sure -- I don't
19   want to -- not that there was anything wrong with them; I think
20   Ms. Tea actually signed them.  The plaintiffs in their papers,
21   and Ms. Gilmore today in response to my questions, said that for
22   all intents and purposes, if the only claim left in this case
23   was a 10(b) claim, or the only claim left in this case was a
24   Section 11 claim, the discovery and pretrial activity would be
25   fundamentally the same.  To the reasonably informed observer, it

 1  would all be the same.  So if it turns out that the 10b-5 claim

 2  against Arconic is in or out based on what the Court of Appeals

 3  would say, it really doesn't change the arc of the case.

 4          Ms. Gilmore, appropriately, was a teeny little bit

 5  more guarded that there could be a little bit of difference.

 6  But what I took away from her answer to my question was:  Judge,

 7  it really isn't going to change the discovery and the pretrial

 8  action if the 10b-5 claim stays in or doesn't stay in.

 9          Do you have a perspective on that from the defense

10  side, Mr. Vizcarrondo?

11          MR. VIZCARRONDO:  Yes, Your Honor.  That just can't

12  be.  For one thing, with respect to class certification, the

13  classes -- the classes would be radically different.  Now, if

14  the 10b-5 claim is eliminated from the case, you're left with a

15  class of purchasers of a single security over a basis of a

16  one-year period.

17          If the 10b-5 claim is left in the case, then you're

18  left with a class of composite purchasers of several securities

19  with regard to eleven different statements pled over -- I

20  believe it is a four-year period.  The class would be radically

21  different and the class certification motion would be radically

22  different.  And the scope of discovery on the merits would, of

23  course, be radically different.  Scienter knowledge would not be

24  in the case.  Reliance would not be in the case, but that's not

25  an issue under Section 11 and it is under 10(b).

1          Ms. Gilmore says that the discovery of the Section 11

2    claim would be the same because they still have to prove a

3    falsity at the time.  But that's different from having to prove

4    and taking discovery on as to knowledge with respect to the

5    alleged falsity at the time, which is much, much, much more

6    expansive.

7          And again, in the 10b-5 case, you're talking about

8    eleven different statements over a four-year period, whereas in

9    the Section 11 case, you're left with one statement, really a

10   fragment of one statement, in one offering document with regard

11   to trades of a little more than a year.

12         So it really defies common sense to say that the scope

13   of the case would not be really substantially different, and

14   resolution of the case would be more facilitated if it turns out

15   that the 10b-5 case claim should be dismissed in its entirety.

16         THE COURT:  Appreciate you answering my questions,

17   Mr. Vizcarrondo.  Some of your answers may have picked up things

18   you wanted to make sure you told me anyway.  But in the event

19   that they didn't, I'm happy to hear anything else you want to

20   say before we flip over to Ms. Gilmore.

21         MR. VIZCARRONDO:  Okay.  Well, not really, Your Honor.

22   I mean, I think our papers set forth well why we think that an

23   interlocutory appeal at this time would be appropriate.

24         I'll just state in summary that the issue of corporate

25   scienter and then whether the 10b-5 case should stay in the case

1    at all is really crucial to this case.  It's crucial to the

2    scope of the case.  It's crucial as to its resolution.

3         The Third Circuit, it has addressed that issue over

4    the years.  In the Tyson Foods case, a non-precedential opinion

5    in 2005 basically ruled that you can't plead the scienter of the

6    corporation if there's no individual corporate officer that's

7    alleged to have acted with scienter that's named as a defendant.

8    And the cases after that, well, it refused to address the merits

9    of whether there should be a corporate scienter case claim is

10   viable -- theory is viable in the Third Circuit, and so what the

11   scope of it would be.

12        In each of those cases which the district court had

13   denied the motion, had dismissed the case, it had rejected the

14   corporate scienter theory, the Court of Appeals agreed.  And if

15   anything, if you read those cases, they indicate great

16   skepticism as to the corporate scienter theory.

17        And again, in the most recent case this past summer,

18   the 695 pension case, it indicated that a claim that is based

19   solely on the alleged fraud of these employees of a foreign

20   subsidiary would not suffice in the absence of participation by

21   the corporate defendant parent, such as in a cover-up.  Nothing

22   of which -- nothing like which is pled here.

23        This is a crucial issue.  It will have a great effect

24   on how this case should go forward.  And the Third Circuit, you

25   know, it had never addressed the issue in a situation where the

1 district court said that a case could go forward on a corporate

2 scienter basis. So this would be really a prime opportunity for

3 it to address -- to squarely address that issue.

4       THE COURT: Appreciate that, Mr. Vizcarrondo. And I'm

5 going to backtrack on a promise that I made to counsel a few

6 minutes ago, and that was that I had no more questions, and I

7 actually do have one more for you. And it's going to be a

8 parallel question that Ms. Gilmore will have a chance to answer.

9       I'm not sure -- as part of the formal 1292(b) case

10 law, this is a factor I need to consider, but I also don't think

11 it's a factor I'm prohibited from asking about and learning

12 about. It just may not turn out to make a difference.

13       Given that the circuit, and certainly Judge Phipps's

14 opinion from August, they had an opportunity to address the

15 issue of the viability of the corporate scienter liability

16 theory head-on; they did not. It ended up as a non-precedential

17 opinion. I suspect it would have been a precedential opinion if

18 they did. But it appears they've not directly dealt with it,

19 and that's one of the limited short list of things the parties

20 in this case agree on.

21       Why is this the case that you've concluded -- you,

22 being you, your team -- have concluded the circuit may well take

23 on the issue? Why would this one be the one? And therefore,

24 there really is a legitimate thing to pony up to them to have a

25 chance to say yes or no on because, unlike the prior cases where

1  they elected not to address this head-on, this may actually be

2  the one that they would take it head-on.

3        MR. VIZCARRONDO:  Well, because, as I said, Your

4  Honor, in the prior cases, the complaint was dismissed at the

5  district court level.  So while they, again, expressed

6  skepticism, I think, generally with regard to the corporate

7  scienter theory, they did not have to address it.  They just say

8  that they agreed with the district court and that would be it.

9        If it's presented here, it's a situation where the

10  case will go forward or not go forward on the basis of what the

11  law is, what the standard is with respect to corporate scienter.

12  So it is different than the prior cases.

13        And if you do give us leave to go to the Third Circuit

14  and the Third Circuit certifies, it will give them -- it will be

15  a case where they really have to address the issue of whether in

16  the Third Circuit the corporate scienter theory is viable, and

17  if so, what are its parameters.

18        THE COURT:  Appreciate that, sir.  Again, your

19  answer's complete enough that I have to ask you another

20  question.  I will confess, I would not know how to go about --

21  personally go about researching the question I'm about to ask

22  you.  I'll bet you Ms. Agama would and all of the other lawyers

23  on this call would.

24        Do you know whether or not this question, or one

25  that's functionally the same, has previously been advanced to

1    the Court of Appeals in a 1292(b) request and had it denied?  Do

2    you know whether or not the Court of Appeals has had to confront

3    whether to take a 1292(b) certification on the question of

4    corporate scienter.

5              MR. VIZCARRONDO:  It was presented to interlocutory

6    appeal, I believe, in the Cognizant case, which is mentioned in

7    the briefs.  But what happened there was the district court gave

8    leave to appeal to the Third Circuit.  And then when it reached

9    the Third Circuit, by that time the case had radically changed

10   because corporate officers were indicted, and the corporation, I

11   believe, was indicted or charged by the SEC.  So both the

12   plaintiff -- and that's radically different.

13             And I think it is clear that at that point if the --

14   if corporate officers are indicted and therefore -- and the

15   corporation is indicted, it wouldn't be too hard to amend the

16   complaint to plead the scienter of the corporation because you'd

17   also be naming on the basis of the indictments the individual

18   corporate defendants who were indicted.

19             So by agreement of the plaintiff and defendant, the

20   Third Circuit basically with -- the petition of interlocutory

21   appeal was essentially withdrawn and sent back to the district

22   court to decide whether leave should be taken in view of these

23   facts that would be -- that would radically change the case.

24   And the Third Circuit expressly said that it was -- their

25   sending it back to district court was without prejudice to going

1  back to the Third Circuit if the district court did not allow

2  leave to amend.

3         THE COURT:  That's sort of the Cognizant one that's

4  mentioned in Judge Salas's opinion where she ultimately denied

5  1292(b) certification on the second go-round.

6         But you're saying the first time it went to the

7  circuit, they didn't decline to take it on interlocutory review

8  because it shouldn't have been taken on interlocutory review.

9  It was because they thought there was an issue that required the

10 district judge to weigh back in.  So it went back down, sort of

11 went through the cycle once again.

12        MR. VIZCARRONDO:  That's correct, Your Honor.

13        THE COURT:  Okay.  Appreciate that, Mr. Vizcarrondo.

14 Is there anything, because of the questions I asked you, you

15 want to add to your argument?

16        MR. VIZCARRONDO:  No, Your Honor.

17        THE COURT:  Appreciate that.

18        Ms. Gilmore, the floor's yours.  I don't have any

19 other warm-up questions because I took you out of turn and asked

20 those first.  So I'm happy to hear your response to anything

21 Mr. Vizcarrondo said today or anything else you want to say.

22        MS. GILMORE:  Sure, Your Honor.  Just on the last

23 point, you had the -- Judge Walls, who was the judge before

24 Judge Salas took over in the Cognizant case, he had certified

25 the issue because he had picked one of the -- he had rejected

one of the nuances of corporate scienter doctrine over another.
He rejected the narrow principle because he thought it would
allow defendants in some cases to evade liability, and that's
why he certified the issue itself.

      The Second Circuit refused to take the case when it
was -- they were told by plaintiff that they intended to amend
the complaint.  And as you recognize, a second time around in
front of Judge Salas, the defendants again raised the issue of
corporate scienter which Judge Salas, just as in this case,
which I think is on all fours, in re Cognizant declined to
certify the issue.

      Counsel for defendants stated at least twice that the
Third Circuit has expressed great skepticism about the corporate
scienter theory.  The Third Circuit has done no such thing.
They had had the opportunity to say they expressed skepticism.
They never did it.  Not just that, but they had the opportunity
to say:  We do not recognize the issue of corporate scienter.
It could have taken one sentence for them to do that; they did
no such thing.  In each case they left the issue to the
competent hands of the district court judges who have applied
the issue as it is right now to the facts of their case, which
is what this Court has done.

      I wanted to also mention that defendants now hang
their hat on Tyson in some ways.  I really don't understand why.
Tyson was never mentioned by defendants in their motion to

1   dismiss, nor was it mentioned in their opposition to -- in their

2   reply for the support of their motion to dismiss.  I think it's

3   because it was an implicit understanding by defendants that

4   their case is completely irrelevant here.  In Tyson --

5          THE COURT:  Well, it could be because it may be

6   Mr. Vizcarrondo and his team, you know, they didn't have to see

7   my fingers get burned when I've cited NPOs in decisions that

8   I've issued, and the Court of Appeals has gently and sometimes

9   not so gently with me, and even in affirming me, have said:

10  We're doing it for reasons that we've said are precedential, not

11  the NPOs that you've relied on.  So if Tyson was an NPO, maybe

12  that's why Mr. Vizcarrondo didn't cite it.

13         MS. GILMORE:  I think there were others, Your Honor,

14  that were non-precedential which Mr. Vizcarrondo had cited.  Be

15  it as it may, that case is completely not relevant here.  The

16  court there didn't even mention, let alone discuss the doctrine

17  of corporate scienter.  And the five decisions in which the

18  Third Circuit did discuss the issue of corporate scienter after

19  Tyson, not once -- not once, cited Tyson.  Tyson is also

20  factually distinguishable.  And as to the --

21         THE COURT:  One of the points Mr. Vizcarrondo made, if

22  I heard him correctly, was the circuit has not been

23  confronted -- his research, his team's research, has not

24  revealed a case where the Third Circuit on review, appellate

25  review, has had to address a decision of a district court where

1    the district court applied the corporate scienter doctrine, at

2    least not in a situation where it had applied it outside of the

3    alleged scienter of a named defendant officer.

4           And Mr. Vizcarrondo says one of the reasons this is

5    different, Judge, and this may be the one, is you said it

6    existed, and you applied it, and the case is marching on.  And

7    that's a procedural position that Court of Appeals has not yet

8    had to confront.

9           Has your research revealed anything different,

10   Ms. Gilmore?

11          MS. GILMORE:  I think that is a distinction without a

12   difference -- at least based on the five cases, the recent five

13   cases that the defendants have put in their brief, that is a

14   distinction without a difference.

15          The Court of Appeals had every opportunity to discuss

16   the issue of corporate scienter.  They never did.  They actually

17   implicitly seemed to acknowledge the broader theory of scienter.

18          So just to say that just -- I just don't see that as

19   the exceptional circumstance of -- any defendant can come in and

20   come up with a particular set of facts and say, well, my facts

21   are really here.  So really justifying this case review --

22          THE COURT:  But let me ask you this.  I know you read

23   the Third Circuit's opinion in Ellis and I know you read my

24   opinion in Ellis because you talked about it.  And one of the

25   reasons I certified that was that -- the two reasons, when you

1   get to the very last two pages of the opinion where I indicated

2   that I was going to certify the question that was before the

3   Court and then did in the order, was -- I said, this is a big-

4   deal question because it impacts the national economy.

5          In that case it was what I concluded, and the Third

6   Circuit agreed, was an apparent tension between two important

7   federal statutes:  The United States Bankruptcy Code, which has

8   its genesis in the Constitution, and the various fair employment

9   practice cases -- laws that Congress passed beginning with the

10  Civil Rights Act of 1964.  So I said, this is a big-deal

11  question because it impacts fundamental federal interests, and

12  it's going to keep coming up.  So I said, you put those two

13  things together; I think the Court of Appeals ought to have a

14  chance to decide to take it, and they did.

15         Isn't this corporate scienter issue under 10(b), and

16  particularly if it exists, can it be generated as a theory of

17  liability based on anything other than the state of mind of a

18  named corporate officer defendant?  Isn't that an important

19  question in the national economy?  And isn't it one that is

20  likely to recur?  Don't the cases that both teams have cited

21  here demonstrate that it's likely to recur?

22         Now, the Court of Appeals could disagree with that or

23  disagree that those are weighty interests.  But aren't the same

24  principles in application here?  When I certified the GL vs.

25  Ligonier School District case, again, I said the same thing:  I

1  think this is a big deal because it affects the ability of the

2  parents of every student who may be IDEA qualified for a free

3  and accessible public education, and it's going to keep coming

4  up.  And I cited other cases that indicated that it kept coming

5  up.

6          And I know, I guess, literally you could say that

7  about a tort case or any contract case, and not that those

8  aren't important principles of our common law; they are, but the

9  stakes are pretty high here.

10          I mean, aren't those two factors, don't they weigh in

11  favor of letting the Court of Appeals decide whether this is, as

12  Mr. Vizcarrondo would argue, "the case" to take this question on

13  because it's a big deal, it's important in the national

14  economy -- international economy, but I'll keep it in our

15  borders for the moment -- and it is likely to repeatedly come up

16  in litigation of significance?  Consequence.

17          MS. GILMORE:  Your Honor, this case has been

18  repeatedly, right, presented to -- the issue of corporate

19  standard has been repeatedly presented on no less than five

20  occasions in the past few years to the Third Circuit.  If the

21  Third Circuit thought it was such a fundamental issue when it

22  reached the Third Circuit, thought it should really take a

23  position on whether or not it's going to reject it altogether,

24  it would have done so as recently as this past year.

25          And I wanted to also point out that the Third Circuit

1    opinion from PAMCAH, the Third Circuit, it didn't break any new

2    ground.  As Your Honor specifically mentioned, the case simply

3    stated that just imputing the scienter of somebody at the

4    subsidiary to the corporate parent is not sufficient, and I

5    quote, merely by dint of ownership.  It didn't say anything

6    else.

7              THE COURT:  Right.

8              MS. GILMORE:  And Your Honor has specifically

9    addressed this issue in your opinion -- and I'm looking at

10   page 44 -- again, because this non-precedential Third Circuit

11   opinion did not break new ground.

12             Your Honor specifically said, "The scienter of an

13   officer of a subsidiary may be imputed to the subsidiary's

14   parent if the plaintiff adequately alleges that the parent

15   company 'possessed some degree of control over, or awareness

16   about, the fraud,'" citing to Valentini and Makor Issues and

17   another Third Circuit case, Winback and Conserve Program.

18             So again, Your Honor acknowledged that issue,

19   acknowledged that it's -- you cannot -- we agree with that; you

20   cannot raise the issue of corporate scienter imputed from an

21   officer of a subsidiary to a corporation merely by dint of

22   ownership.  But that's not what we did here.

23             The defendants don't like the results, but Your Honor

24   has found that the complaint sufficiently alleges, through

25   corroborative evidence from confidential -- several confidential

 1  witnesses and documentary evidence, that Arconic Inc. did have

 2  control over Mr. Wehrle and Mr. Schmidt.  So this case is on all

 3  fours and it's completely -- I don't see the Third Circuit

 4  opinion as breaking any new ground.  It doesn't say anything

 5  that this Court didn't know and didn't address in its opinion.

 6       THE COURT:  Let me ask you this, Ms. Gilmore, and I

 7  understand -- and I've pulled up page 44 and was looking at it

 8  as you were accurately noting what I said in that opinion.  And

 9  the observation I'm about to make, which will have a question at

10  the end of it, I promise you, so you'll have a chance to respond

11  to something.  And this could come off by me as being

12  economically insensitive, and I don't intend it to be, but I do

13  intend it to be pragmatic.

14       All anyone needs to do is look at the lineup of the

15  lawyers that we have on our proceeding today.  These are some of

16  the most experienced, engaged lawyers in their slice of the

17  legal profession around the country, maybe beyond the country,

18  but certainly around the country.  And no matter what -- whether

19  the 10b-5 claim stays in the case or not, these are the lawyers

20  that are going to be engaged playing at the top of our common

21  profession.

22       Given what the arc of the case will be, whether the

23  10b-5, and given the role the 10(b) claim plays in this case and

24  given what will inevitably unfold as the case marches forward,

25  whether it's a Section 11 and 10(b) claim or just a Section 11

1 claim -- because your observation, Ms. Gilmore, is it's not

2 really going to change the arc of the discovery, which I think

3 by any fair definition is going to be a lot, and it's going to

4 be complex and complicated.

5         Given that, why shouldn't this Court -- if I'm correct

6 that this question is one that is a big deal under our law and

7 is highly likely to recur, and past is prologue, I recognize

8 that any task in the case costs time and money.  I recognize any

9 task in the case causes time to resolution.  But in the grand

10 arc of this case, why wouldn't now be the time to give the Court

11 of Appeals the chance to say no?  Judge Hornak, we disagree, it

12 isn't that big of a deal issue or it is not that likely to

13 reoccur or there really isn't a substantial grounds for

14 difference of opinion on controlling law or it's too fact bound.

15 They may say any or all of those things.  Or, as Mr. Vizcarrondo

16 argues and hopes, they'll say, we'll take it.

17         But either way, isn't now, as between now and at the

18 end of judgment, or if we get the class certification and the

19 Court makes a class certification decision -- and I apologize

20 I'm not as on top of it as you folks are.  I think it's

21 Rule 23(c) that allows for an immediate appeal -- I don't think

22 it's 23(d); maybe it's a little further down the alphabet --

23 allows for request for an immediate interlocutory appeal of the

24 class certification decision.  Isn't now the best of the times

25 to give the Court of Appeals a chance to decide whether they

1  want to address this question rather than one of the junctures

2  that will come later, final judgment, Rule 23 certification?

3       Why isn't now the time -- and if the Court of Appeals

4  wants to say forget about it, okay, they do.  But why isn't now

5  the time to give them the chance to decide what they want to say

6  about the corporate scienter principles?

7       MS. GILMORE:  Your Honor, first of all, I think that

8  that question presumes that the courts are indifferent to the

9  passage of time to the plaintiffs and the class.  I mean, many

10  of the class members are pensioners and many are in their --

11       THE COURT:  But no offense, Ms. Gilmore, you're the

12  ones that want to keep amending.  You want to file a fourth

13  complaint.  So, you know, I know the Court has not been as quick

14  on the draw as we normally take pride in around here in Chambers

15  6A.  The pandemic's had a little effect on that, but I'm not

16  going to make any excuses.  We're not quite as quick on the draw

17  as we normally are.  But you guys are the ones that want to keep

18  changing the case.  So it's a little brassy to say others are,

19  including me, delaying this.

20       MS. GILMORE:  Your Honor, we don't think there is a

21  need to amend at all.  We think, as Your Honor decided, the

22  facts are sufficiently pled here to plausibly impute the

23  scienter of Mr. Wehrle and --

24       THE COURT:  Yeah, but you want to engage in

25  wait-and-see pleading because you're saying, but if it turns out

```
 1    they're not, Judge, we want to shovel some more in.  And that
 2    doesn't fly in the circuit, and it certainly doesn't fly here.
 3            MS. GILMORE:  Your Honor, we would only do that if the
 4    Court deems that's a game changer.  We don't think there is a
 5    need to do it.  We think that complaint plausibly sets forth the
 6    facts --
 7            THE COURT:  So if I grant leave for the 1292(b) motion
 8    to be filed and Mr. Vizcarrondo's team files it, part of the
 9    opposition will not be we have other stuff we want to amend with
10    because it's unnecessary?
11            MS. GILMORE:  I can't promise that, Judge.  I can't
12    prejudice the class.  I don't know what they're going to argue.
13    I don't know whether the Third Circuit -- certainly the Third
14    Circuit should be entitled to have a full view of the facts in
15    front of it if it decides to --
16            THE COURT:  So you will argue -- I mean, you know what
17    Mr. Vizcarrondo's petition is going to look like.  Unless there
18    has been some new cases that came down since this pension 675
19    case, it's going to look a whole lot like his brief here.  I
20    mean, they may jazz it up a little bit based on what you filed
21    in response.
22            My question is:  If the petition is filed at the Court
23    of Appeals because I grant leave to file it, are the plaintiffs
24    going to contend that it should be denied by the Court of
25    Appeals because the plaintiffs are going to seek leave to
```

 1   further amend?  Or are you going to say what we have is good

 2   enough?

 3           MS. GILMORE:  I think we would reserve our rights to

 4   raise both arguments.  Certainly the first one --

 5           THE COURT:  You might have to do it in eleven days,

 6   Ms. Gilmore.  So I don't know what else you're going to have to

 7   think about, because if I grant the motion tomorrow -- I'm not

 8   saying I will or won't, but I could -- then Mr. Vizcarrondo's

 9   team's going to file it ten days from tomorrow, and you're going

10   to have to then respond --

11           MS. GILMORE:  Your Honor --

12           THE COURT:  -- if you choose to respond.  So are you

13   going to argue that you want to amend further?

14           MS. GILMORE:  As I sit here, in all honesty, I don't

15   want to prejudice the class.  So probably, yes, I would argue in

16   the alternative that we should be entitled to amend and present

17   additional facts that maybe the Third Circuit in the unlikely

18   event, yeah.

19           THE COURT:  So it circles back to my first point.

20   Okay, I get it.

21           MS. GILMORE:  Right.  Your Honor, again, this -- you

22   know, I don't think this case involves the exceptional

23   circumstances that would warrant certifying the issue --

24           THE COURT:  Would there be any?  Could there be any --

25           MS. GILMORE:  Yes.

1        THE COURT:  -- in the corporate scienter situation?

2   What would be an example?  I'm not saying it's limited, but what

3   would be one example from the list of exceptional circumstances?

4        MS. GILMORE:  I think if a district court decides that

5   I will not recognize the doctrine of corporate scienter, I think

6   that would be the perfect case to take to the Court of Appeals.

7        THE COURT:  But Mr. Vizcarrondo says the prior five of

8   them -- well, he's saying they dismissed it.  So, Ms. Gilmore,

9   you're saying in the prior cases where the Court of Appeals has

10  declined to directly answer the question, in each of those cases

11  the district court said it exists --

12       MS. GILMORE:  Correct.

13       THE COURT:  -- but the pleadings weren't good enough

14  to get over the line?

15       MS. GILMORE:  That's correct, Your Honor.  And in one

16  instance, which was the one with Judge Walls, he didn't

17  acknowledge the narrowest nuance of the document of corporate

18  scienter because he was concerned that it would give defendants

19  carte blanche to basically evade liability if it were such -- if

20  it were applied in such narrow circumstances.

21       I do want to make two points, Your Honor.

22       THE COURT:  Let me just make sure I'm clear on the

23  last point, and then we will make sure you have plenty of time

24  to make other points.

25       You're saying if I go back and reread the other Court

 1   of Appeals cases, our circuit, on this topic, what I'm going to

 2   find is the district court in each of those cases said the

 3   principle of corporate scienter-based liability exists, but in

 4   that specific case, it has not been sufficiently plausibly pled.

 5   And the Court of Appeals ended up affirming them without having

 6   to decide definitively whether or not the doctrine exists?

 7          MS. GILMORE:  Yes, that is my under --

 8          THE COURT:  You're saying there's not a Court of

 9   Appeals case where the Court of Appeals had before it a decision

10   of a district judge that said the corporate scienter principle

11   does not exist?

12          MS. GILMORE:  That is my understanding, Your Honor.

13   As I sit here, that is my understanding.  It has never been the

14   case.

15          THE COURT:  Got it.

16          MS. GILMORE:  Now, I did want to mention two points.

17   I know we mentioned it in our opposition.  One is that the

18   defendants -- just as the defendants did in re Cognizant

19   Technology -- did not argue that the Third Circuit will reject

20   the doctrine of corporate scienter altogether.

21          I can tell you, Your Honor, it's Docket Number 112 at

22   page 16 of plaintiffs' -- of defendants' motion to dismiss.  The

23   same heading -- the same title as the heading or the title of

24   the argument made by defendants in Cognizant.  Defendants simply

25   stated:  The Third Circuit has not adopted collective scienter.

 1             And if I go to the Cognizant opinion, Judge Salas
 2   makes a specific point as to that in Footnote 4.  The opinion is
 3   2021, Westlaw -- one second, please -- 1016111.  Judge Salas
 4   notes, and I quote:  "Although Cognizant notes that the Third
 5   Circuit has never accepted the corporate scienter doctrine, it
 6   does not argue that the Third Circuit would reject the doctrine
 7   altogether."  The same argument that defendants made here.

 8             The other point I wanted to make is that defendants
 9   now claim that they did argue for a fourth approach of corporate
10   scienter, the so-called extraordinary circumstances approach.
11   But that is not a fourth approach.  That is the existing law
12   which applies the broader theory or nuance of corporate scienter
13   that has been adopted or espoused by the Second Circuit and the
14   Seventh Circuit.  So it's not a fourth different standard.

15             And this Court has specifically noted that plaintiffs
16   do not put forth a theory of exceptional circumstances because
17   this is not the case that would involve that theory because
18   here, unlike in those exceptional circumstances cases, we are
19   able to plead specific individuals who have acted with scienter.

20             So it's not a new fourth theory that the defendants
21   claim they now have come forward with.  It's actually subsumed
22   under the existing broader nuance of corporate scienter.

23             THE COURT:  Appreciate that, Ms. Gilmore.  Let me ask
24   you this:  If you did amend, would you name as a specific
25   defendant Diana Perreiah as a 10(b) defendant?

 1          MS. GILMORE:  I think we're likely to name her, yes,

 2   because she's -- to our knowledge, she's employed by Arconic

 3   Inc.

 4          And also, I note defendants now take issue with it,

 5   but Mr. Schmidt specifically testified in his first day of

 6   testimony that he had a role in Global Arconic, in the parent

 7   company.

 8          THE COURT:  This is his testimony over in England in

 9   the hearings over there?

10          MS. GILMORE:  Yes.  That he had a role in Global

11   Arconic which was separate from his role in the subsidiary and

12   that he directed -- reported directly to Diana Perreiah.

13          I know defendants now are pointing out some

14   ambiguities about that testimony which they tried to clarify,

15   but I don't know whether it was -- I don't want to suggest it

16   was witness coaching or not, but this was the testimony that

17   Mr. Wehrle gave the first day of his testimony.  It was in open

18   court.

19          THE COURT:  And at the pleading stage, everybody would

20   have to take as true the words that he said.  If there are

21   inferences to be drawn or challenges to its --

22          MS. GILMORE:  Right.

23          THE COURT:  -- credibility, they're collateral; that

24   would have to come up in a collateral proceeding.

25          MS. GILMORE:  That's correct, Your Honor.  The courts

```
 1  would interpret all ambiguities in a motion to dismiss stage in

 2  favor of the plaintiff.  But our understanding is that

 3  Ms. Perreiah is employed by Arconic Inc.

 4            MR. VIZCARRONDO:  Your Honor, if I may?

 5            THE COURT:  We'll circle back in a minute,

 6  Mr. Vizcarrondo.  I know you want -- and I want to hear from you

 7  on that point, but I want to make sure that Ms. Gilmore has had

 8  a chance to say what she wants to say.  And I have to make sure

 9  I don't have any last lingering questions.  And then we'll

10  circle back to you as the proponent of the motion.

11            Ms. Gilmore, the floor remains yours.

12            MS. GILMORE:  I understand, Your Honor, so that if you

13  were to grant such a -- 28 USC motion that you would impose a

14  stay.  So I don't know -- I had some cases to cite to the Court.

15  But if it will not make a difference, I will not cite them.

16  They were cases in which the district courts and some circuit

17  courts have -- are using the -- applying the traditional stay

18  factors that have been espoused by the Supreme Court and by the

19  Third Circuit itself.

20            THE COURT:  I apologize, Ms. Gilmore.  I had to shut

21  another device off.  I'm not sure it's a circumstance all of you

22  have had to confront more than once recently.

23            I don't want to say that I wouldn't listen to counsel,

24  Ms. Gilmore, and I'm happy to hear from you.  I will say this:

25  At least based on the limited experience I've had, the up and
```

```
1    back to the Court of Appeals has been so swift that I -- if I
2    granted the 1292(b) motion, in all likelihood, absent some
3    exceptional reason not to, I would keep the case on ice until we
4    heard back from the Court of Appeals.
5              Now, they could say, even if they took it, we want
6    everything else to keep going, and I would keep going.  But if I
7    granted the defendants' leave to take a run at this question
8    with the Court of Appeals, I almost certainly would stay the
9    case until we all heard back from the Court of Appeals.
10             MS. GILMORE:  Okay.  So I don't think I will be citing
11   those cases, then.
12             THE COURT:  Okay.
13             MS. GILMORE:  If the Court would like me to cite them
14   I will, but otherwise, I don't -- based on your -- what Your
15   Honor said, I don't think it's necessary.
16             THE COURT:  Okay.  That's fine, Ms. Gilmore.  Anything
17   else you want to talk about, ma'am?
18             MS. GILMORE:  No.  Again, as we said, I don't think
19   there is a controlling question of law here because the district
20   court did not reject the theory of corporate scienter
21   altogether.  Defendants did not argue below -- I mean, in front
22   of you that such -- that the Third Circuit will never -- will
23   never accept the theory of corporate scienter.  They didn't --
24             THE COURT:  And should not.  And should not.
25             MS. GILMORE:  And should not.  They never put forth a
```

```
 1    fourth approach.  The exceptional circumstances approach has
 2    been subsumed under the existing law.
 3             And every single circuit court that has decided the
 4    issue of corporate scienter or addressed it at all found that
 5    the doctrine is alive and well and have applied it.  Maybe with
 6    different nuances, but they have applied it.
 7             THE COURT:  I got it.  I appreciate that.  It's very
 8    helpful.  Thank you.
 9             MS. GILMORE:  Thank you.
10             MR. VIZCARRONDO:  Your Honor --
11             MR. ROSENFELD:  Your Honor?
12             THE COURT:  Mr. Rosenfeld?
13             MR. ROSENFELD:  Good morning, Your Honor.  If I could
14    be heard for a minute?  I represent --
15             THE COURT:  Yes, because I'll make sure if there's
16    anybody else on either team that wants to weigh in, we'll give
17    them a chance.
18             MR. ROSENFELD:  Is now a good time?
19             THE COURT:  Sure.
20             MR. ROSENFELD:  Thank you, Your Honor.  Just to
21    clarify one point made by Ms. Gilmore regarding the Section 11
22    burden of proving knowledge.  I just want to clarify it's not to
23    prove knowledge because what -- the allegation here is a
24    statement about Arconic's belief.  So we certainly would be
25    entitled to discovery on their knowledge; it would not be
```

 1   limited to their knowledge.  It's not a requirement to prove

 2   their knowledge to successfully plead a Section 11 claim.

 3   That's point number one.

 4              Number two, the Court had mentioned that --

 5              THE COURT:  So if they had an actual but incorrect

 6   belief that still is enough?

 7              MR. ROSENFELD:  Right.  Or at least know what the

 8   basis would be for their belief.

 9              THE COURT:  Understood.

10              MR. ROSENFELD:  And with regard to the Court's

11   statement that if the -- if it were to grant the defendants'

12   motion and stay the case, we would ask that the stay not extend

13   to the Section 11 claim because we have not really seen a basis

14   to do so.  Defendants want to keep the case on ice for as long

15   as they can, so that would be prejudicial to the Section 11

16   case, the class.  So we would ask that it not be extended to

17   them.

18              THE COURT:  I have to say, Mr. Rosenfeld, it's

19   possible, but unlikely, that I would do a partial stay.  If this

20   is going up to the Court of Appeals -- and that may be an

21   argument that the plaintiffs would make as to why the Court of

22   Appeals shouldn't take it, or that if I did grant a stay the

23   Court of Appeals should modify it.  But it's likely -- not

24   certain, but likely -- that if I did grant the motion to file

25   the 1292(b) motion with the Court of Appeals, that I'd keep the

1    entire case on ice until the Court of Appeals had disposed of it

2    one way or the other, which could be to grant it, it could be to

3    deny it, could be to grant it and to modify any stay and say

4    litigation should continue in the district court while we sort

5    out the 10b-5 thing.  But I probably would not do that one on my

6    own.

7              I understand the basis for the ask.  It's not an

8    unreasonable ask.  It's not irrational.  But I'd probably -- if

9    I would stop the presses formally with the stay order, I would

10   likely do it as to everything until we heard from the Court of

11   Appeals.

12             MR. ROSENFELD:  Thank you, Your Honor.

13             THE COURT:  You're welcome, sir.

14             Anyone else from the plaintiffs?  And I would have

15   done this anyway, Ms. Gilmore.  There's nothing that I found

16   incomplete about your presentation, either in writing or on the

17   video today.  And, Mr. Rosenfeld, I appreciate you adding a few

18   grace notes to it.  But is there anything anybody else from the

19   plaintiffs' side wants to say?

20             MS. GILMORE:  No, Your Honor.

21             THE COURT:  Okay.  Thanks, Ms. Gilmore.

22             Mr. Vizcarrondo, you had something you wanted to say

23   before, and it was not inappropriate to bring it up.  I just

24   moved the timing of it.  But you have a right to reply because

25   you're the proponent of the motion.

1          MR. VIZCARRONDO:  I understand, Your Honor.  Briefly,

2    with respect to Diana Perreiah, it doesn't matter whether she's

3    an officer of Arconic Inc. now.  I don't believe that she is an

4    officer of the relevant time period.

5          But beyond that, and more importantly, if they -- I

6    don't believe that they will amend the complaint to allege a

7    claim against her because if they do, they have to allege that

8    she made a public statement -- a public statement that was false

9    and misleading with scienter.

10          And in the document which they provided to the Court,

11    there's no indication about any public statement that Diana

12    Perreiah made that would be relevant to this case, let alone

13    that she acted -- that she made the statement knowing that it

14    was false and misleading.

15          For example, with respect to Mr. Kleinfeld, they

16    allege that he had made certain public statements which they

17    alleged were the basis of the 10b-5 claim because at the time he

18    made them he had scienter that he knew that they were false and

19    misleading.

20          Your Honor dismissed the claims because you found, I

21    believe correctly, that the fact that they alleged of his

22    knowledge -- post-knowledge of the falsity of the statements was

23    insufficient.

24          So they'd have to allege that she made a statement

25    that was false and misleading and with scienter.  And they point

1  to no statement that she made that would be a basis for a claim

2  against --

3          THE COURT:  Other than internal emails, as I

4  understand, that they've advanced?

5          MR. VIZCARRONDO:  Correct.  Correct.  Maybe some

6  inquiries to either Schmidt or Wehrle about what they were

7  doing -- how they handled fire testing in Europe.  Nothing about

8  whether or not the product in Europe failed to test and whether

9  or not they made misrepresentations to anyone about those tests;

10 there was nothing in there about that.  But more important,

11 there's nothing about any public statement she made that could

12 be pled to be false and misleading.

13         And the documents also, you know, don't show any

14 active participation by anyone at Arconic Inc. in the alleged

15 fraud at the subsidiary level, which the 675 pension case

16 suggests is what's required -- not just that they were delegated

17 or deputized with respect to this product, that was actually

18 active participation by the corporate defendant parent.

19         And then, I guess finally, with regards to the prior

20 cases in which the Third Circuit affirmed the district court's

21 dismissal of cases, cases with respect to corporate scienter, I

22 haven't -- as we've sat here, I haven't gone back and read all

23 those cases or the district court cases.  But I don't believe

24 that the district courts in those cases actually held that

25 corporate scienter existed.  I don't think it would be their,

 1    really, position to do that because the Third Circuit had not

 2    spoken.  I believe in those cases the district court said that

 3    it was an open question in the Third Circuit as to whether a

 4    corporate scienter theory was viable.  But that even if it were,

 5    under any circumstances, the allegations in this case would not

 6    be suffice -- would not suffice to go forward on a corporate

 7    scienter theory.  And that's all that the Third Circuit ruled on

 8    in affirming the cases.

 9            Frankly, in that situation where the district court

10    did not have to reach the question of whether or not there was

11    corporate scienter because they found that the allegations would

12    have been insufficient under any circumstances, it frankly would

13    have been dicta by the Third Circuit to reach the question of

14    whether in fact the corporate scienter theory would be viable in

15    the Third Circuit.

16            In this case, if it goes up to the Third Circuit, it

17    wouldn't be dicta.  They would have to address the issue of

18    whether corporate scienter is a viable theory in the Third

19    Circuit, and if so, what are the requirements for it?

20            THE COURT:  Appreciate that, sir.  Let me ask you one

21    question.  And I appreciate very much Ms. Gilmore's both

22    precision and constraint, but I do feel some obligation to

23    follow up on something she had raised with the Court with you,

24    Mr. Vizcarrondo.

25            Ms. Gilmore was about to argue, and read the room, if

1  you will, and sort of held her fire.  Mr. Rosenfeld put just a

2  little bit of gloss on it.  But why should the Court -- if I do

3  grant the motion, the 1292(b) request motion, the one that's now

4  pending, and say, have at it at the Court of Appeals, why

5  shouldn't the case proceed here at least as to the Section 11

6  claim?  Because there's not going to be a whole lot done.  But

7  it would give the parties an opportunity to sort of get started

8  on case management activity in terms of case management order,

9  meeting and conferring, all of those things.

10        Why should I follow what would be my sort of

11  instinctive reaction, which is to put the brakes on everything?

12  But Ms. Gilmore argues, and was going to argue some more, that I

13  shouldn't do that.  And Mr. Rosenfeld put a little bit of a

14  gloss on it.  If I do grant your motion, why should I stay the

15  entire case and keep it stayed until the Third Circuit does

16  something?

17        MR. VIZCARRONDO:  Well, Your Honor, at the very least,

18  I believe the first order of business going forward would be a

19  class certification motion.  I think that's the first thing.

20  And there would be class certification discovery, and then there

21  would be motions made and argument to Your Honor.

22        THE COURT:  Certainly your case management order might

23  suggest segmented case management activity with one of the first

24  items being class discovery; I understand that.

25        MR. VIZCARRONDO:  Right.  And it would be -- if the

1    case is going to be reviewed by the Third Circuit on this

2    question of corporate scienter, which would determine what the

3    classes were, whether there would be a 10b-5 class as well as a

4    Section 11 class or just a Section 11 class.  So it would be,

5    frankly, really a huge, huge waste of judicial resources, the

6    parties' resources to have litigation on class certification

7    before it is determined what the potential class is.  And if the

8    case -- if interlocutory appeal is granted, that can't happen

9    until the appeal is determined.

10             THE COURT:  Okay.  I understand, sir.

11             Ms. Gilmore, I sort of cut you off on that question.

12    But I reopened the door, if you will, a little bit with

13    Mr. Vizcarrondo.  If there's anything further you want to say on

14    the question of a stay at all or a scope of stay, I'm happy to

15    hear from you.  I don't want your self-restraint to make you

16    believe you didn't have a fair opportunity to tell me what you

17    think I should know.

18             MS. GILMORE:  Certainly, Your Honor, we did argue in

19    our papers that the Section 11 claim should not be held hostage

20    to any decision with respect to the Section 10(b) claims because

21    the scienter element is not an element of the Section 11 case.

22    So it would not impact those claims.  Of course, the class -- we

23    can always move to certify class only or a subclass of the

24    Section 11 claims.  Again, the case should not be hostages to

25    that.

```
1              I did want to cite to the Court, and I will now, cases
2    where courts have applied the traditional stay factors espoused
3    by the Third Circuit in -- and we cite Westinghouse, which is a
4    Third Circuit case.  And those cases are -- even circuit courts
5    have applied the traditional tests to interlocutory appeals in
6    the context of here -- in the context of class certification
7    context, but the policy's the same.  It's, again, interlocutory
8    appeals, and the policy is against piecemeal litigation.  Those
9    cases are:
10             A Second Circuit case from 2001, In Re:  Sumitomo
11   Copper Litigations vs. Credit Lyonnais, 262 F.3d 134;
12             And a Seventh Circuit case from 1999, Blair vs.
13   Equifax Check Services, 181 F.3d 832.
14             We also found the district courts within the Third
15   Circuit that have applied the traditional test between
16   interlocutory appeals in the context of class certification:
17             Heinzl vs. Cracker Barrel, 2016, WL 5107173, Western
18   District of Pennsylvania, June 8, 2016;
19              Charlot vs. Echolab, 220 WL 1546439, District of New
20   Jersey, 2020;
21             And Bordeaux vs. Limited Financial Services, 2018,
22   WL 1251633, District of New Jersey, March 9, 2019.
23             We also have district courts outside the Third Circuit
24   that specifically applied the traditional stay factors in the
25   context of interlocutory appeals, specifically brought under
```

1  28 USC 1292(b).

2          To start with, a recent decision from the Second

3  Circuit issued by a circuit court judge sitting by designation

4  from the Second Circuit.  The decision is Sanders vs.

5  Houslanger, 2018, WL 6444922;

6          Another case from Eastern District of Texas, 2021,

7  Earl vs. Boeing Company, 2021, WL 1080689;

8          And a case called Sierra Club vs. Virginia

9  Electric & Power Company, 2016, WL 5349081.

10          THE COURT:  Appreciate that.  Just because I couldn't

11  write as quickly as I needed to, could you give me the cite for

12  the Heinzl case out of this district that you mentioned earlier,

13  Ms. Gilmore?

14          MS. GILMORE:  Sure.  2016, WL 5107173.

15          THE COURT:  Thank you very much.

16          MS. GILMORE:  Thank you.

17          THE COURT:  You're welcome.

18          Anyone else on the defense team want to add anything

19  to what Mr. Vizcarrondo shared with me today, shared with all of

20  us?  I know it's bold when I do that because everyone carefully

21  identifies their lead lawyers for good reason.  And I get it; I

22  understand it.  But particularly when we're in the world of Zoom

23  and you're not sitting right next to each other and can pass a

24  note -- I know you can do it electronically, but in fairness,

25  since everyone made time in their calendar and scheduled to be

1    here, I do want to check.

2              MR. ROSENFELD:  Your Honor, can I add one more point?

3              THE COURT:  Yes.  But I should tell you, the proponent

4    of a motion in our court, in my court, in the court I run,

5    always gets the last word.  So I'm happy to hear another point,

6    Mr. Rosenfeld, but I'll make sure Mr. Vizcarrondo has a chance

7    to say anything.

8              MR. ROSENFELD:  And it's just to respond to what

9    Mr. Vizcarrondo mentioned a few minutes ago.  And that is with

10   regard to class certification, he had suggested that there would

11   be a bifurcation of discovery for class --

12             THE COURT:  I actually said that that would be the

13   first thing out.  But he said that that would -- but I might do

14   that.  But go ahead, sir.

15             MR. ROSENFELD:  Right.  So that's highly unusual to

16   have bifurcated discovery.  Usually discovery precedes the pace,

17   both fact discovery and class discovery.  So I don't see there

18   would be a reason to bifurcate them.

19             In any event, obviously, there would be different

20   classes seeking to be certified here, a class on behalf of the

21   Section 11 claim and a class on behalf of the 10(b) claim.  So

22   that should certainly not be a basis for pausing Section 11

23   claims to proceeding.

24             THE COURT:  So would implicit be in what you've just

25   told me, if I were to conclude that Mr. Vizcarrondo was closer

1   to being correct than maybe others, that the scope of the cases

2   to the Section 11 claim and the discovery in the pretrial

3   action, if you will, would be more limited because it would

4   relate to part of one or one statement made relative to one

5   security in a relatively short period of time?  You're saying,

6   if anything, Judge, at least let us do what needs to be done,

7   even if it involves class certification issues as to the Section

8   11 claim, because it's not going to be as big a deal.  It will

9   be a big deal, but relatively speaking.

10           MR. ROSENFELD:  Exactly.  He can certainly start with

11   the Section 11 and then add on what needs to be added on for the

12   10(b).

13           THE COURT:  Understood.  Appreciate that,

14   Mr. Rosenfeld.

15           MR. ROSENFELD:  Thank you.

16           THE COURT:  Before I hear from Mr. Vizcarrondo,

17   Ms. Gilmore, since I identified you as being in the pilot seat

18   for the plaintiffs, is there anything you want to add to what

19   Mr. Rosenfeld just said?

20           MS. GILMORE:  No, I think we made that point in our

21   paper.  And it's true the Section 11 claim should not be held

22   hostage, and certainly, courts permit class certification of

23   subclasses.  So, as I said before, we can have certification of

24   a subclass of Section 10 or versus Section 11.

25           THE COURT:  Understood.  Mr. Vizcarrondo, I promised

 1   you, as the moving party you get the last word.

 2            MR. VIZCARRONDO:  Your Honor, if you allowed us to

 3   take an interlocutory appeal and if it went up to the Third

 4   Circuit, I think and I hope that we would win on the Third

 5   Circuit, and that would be the end of the 10b-5 case.

 6            But if it was not and the 10b-5 claim survived and in

 7   the meantime there had been discovery, both as to class

 8   certification and on the merits with respect to the Section 11

 9   claim, will the plaintiffs say, oh, that's enough, we don't need

10   any more discovery with respect to the 10b-5 claim because the

11   discovery we have been taking as to the Section 11 claim is

12   sufficient?  I seriously doubt that.

13            So we'd be subject to at least two rounds of

14   discovery, two rounds of document searches, two rounds of search

15   term searches, et cetera, et cetera, which, and with all due

16   respect, would be extremely, extremely burdensome while we're

17   waiting for the Third Circuit to hopefully give us a definitive

18   answer on what this case will be about going forward.

19            THE COURT:  Understood.  I understand both your

20   position and Ms. Gilmore's --

21            MS. GILMORE:  Your Honor --

22            THE COURT:  -- and Mr. Rosenfeld's.

23            MS. GILMORE:  -- if I may respond to that?

24            THE COURT:  You may, but Mr. Vizcarrondo's going to

25   get the last word.  But you may.

 1          MS. GILMORE:  Okay.  We did cite many cases to this

 2    Court -- I don't have them handy right now -- that refused to

 3    stay certain claims that would not have been affected by an

 4    interlocutory appeal.  So that would not be reason enough to

 5    just hold the Section 11 claims hostage.

 6          THE COURT:  Well, I understand.  But I actually didn't

 7    hear that being Mr. Vizcarrondo's argument.  His argument, I

 8    viewed as having a legal basis but having a having pragmatic

 9    thrust which was:  Judge, if you let the section -- here's what

10    I heard, Mr. Vizcarrondo, and if I shouldn't have heard this,

11    you'll tell me.  Judge, if you let the Section 11 claim

12    discovery get going and move on while this case is up at the

13    circuit, and if the circuit comes back and says corporate

14    scienter theory of liability exists, and on the second amended

15    complaint or even what the plaintiffs say would be in the third

16    amended complaint, it plausibly could go forward, you're saying,

17    just as a practical matter because the plaintiffs have really

18    good lawyers, just like the defendants do.  There's going to be

19    a significant amount of do-overs of discovery that was already

20    done because it can't be -- what I heard you argue was:  It

21    can't be neatly, easily, and conclusively cabined or categorized

22    as pure Section 11 discovery and pure 10(b) discovery.

23          Did I hear you right?

24          MR. VIZCARRONDO:  Yes, Your Honor.  You said it better

25    than I did.

1          THE COURT:  Well, I don't know about that.  I was just

2   saying what my ears heard, not necessarily what you said.

3          I think we have to call it quits right there.  So this

4   matter is submitted.

5          Ms. Gilmore, anything else not related to what we --

6   not focused on what we've already talked about but different

7   that you want to talk about?

8          MS. GILMORE:  How is the weather?

9          THE COURT:  It's cold.  Is winter.  It's winter.  Just

10  as it probably is -- you're in Manhattan, Ms. Gilmore?

11          MS. GILMORE:  Yes, yes.

12          THE COURT:  Yeah, it's winter in Manhattan too.  It's

13  bright, but it's winter.

14          Mr. Vizcarrondo, anything you wanted to talk about?

15          MR. VIZCARRONDO:  Nothing more, Your Honor.  And thank

16  you for your patience and opportunity to --

17          THE COURT:  No, no, you folks and your clients have

18  been the ones that are patient.

19          I will say one of the things I don't think the

20  argument has changed my mind on is this is a significant case

21  involving significant legal and factual issues.  What we do with

22  all of that may be a different question.

23          And frankly, looking at this lineup of lawyers, I

24  think, is tangible confirmation of that assessment.  So I

25  appreciate the care and preparation and thoughtfulness and vigor

 1    with which you've argued the position.  We're going to work on

 2    getting this out as quickly as I can.

 3            Look, this is not the standard of speed we normally do

 4    here in 6A.  It just isn't.  But, just like you, I have to play

 5    the hand I'm dealt.  And unfortunately, this motion had to get

 6    behind other motions, including a plethora of motions for

 7    emergency release from either BOP or local custody.  And I don't

 8    like that we're in the situation that those motions even had to

 9    be filed or that we had to deal with them or it got in front of

10    yours, but it did.  So I appreciate you and your clients'

11    bearing with the Court as we all work through this.

12            I hope everyone and your colleagues and families have

13    a safe, healthy -- stay healthy -- new year.  I know this is not

14    the last time we'll talk no matter what happens and not the last

15    time we'll be convening on this case.  So I hope, certainly

16    forever, but certainly between now and then, everyone on this

17    call, those you work with, those you're close to, have a great

18    new year and that you stay healthy and safe.

19            MS. GILMORE:  Thank you.

20            THE COURT:  Ms. Agama, anything else we wanted to talk

21    about with any of these folks?

22            THE CLERK:  No, Judge, that's it.

23            THE COURT:  Thanks, Ms. Agama.

24            Ms. Siatkowski, all set?

25            COURT REPORTER:  All set, Judge.

1          THE COURT:  Thanks, appreciate it.

2       (Proceedings concluded at 11:50 a.m.)

3                          -  -  -

4

5

6

7

8

9

10                   C E R T I F I C A T E

11

12          I, SHARON SIATKOWSKI, certify that the foregoing is a
correct transcript from the record of proceedings in the
13  above-entitled matter.

14  s/Sharon Siatkowski
SHARON SIATKOWSKI, RMR, CRR, CBC, CRI
15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25